## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BERNARD FRYSHMAN, PhD,
    1016 East 2nd Street
    Brooklyn, New York 11230,
    (718) 253-4857,

and

BORUCH PINES,
    75 Lawrence Avenue
    Brooklyn, New York 11230,
    (718) 435-8569,

        Plaintiffs,

    v.

UNITED STATES COMMISSION FOR THE
PRESERVATION OF AMERICA'S HERITAGE
ABROAD,
    633 3rd Street NW
    Suite 515
    Washington, DC 20001,

        Defendant.

Case: 1:18-cv-02632
Assigned To : Mehta, Amit P.
Assign. Date : 11/15/2018
Description: Pro Se General Civil (F DECK)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.   This action is brought to stop the imminent desecration of one of Europe's most significant Jewish sacred sites. Congress has charged the United States Commission for the Preservation of America's Heritage Abroad with the responsibility of obtaining international agreements to assure that such sites—and especially endangered cemeteries—are protected. But in the face of plans by the government of Lithuania to build a massive concert and convention center on the grounds of a historic Jewish cemetery, the Commission has failed to act. That failure is an abdication of the agency's statutory responsibility. Plaintiff respectfully requests that this Court order the Commission to follow Congress's command by at least *attempting* to obtain

protection for the sacred site. Without such an order, what is left of a landmark of Jewish culture in Europe will soon be irrevocably damaged.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702. Venue is proper under 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Dr. Bernard Fryshman is a professor of physics at the New York Institute of Technology. He is also an orthodox Jew and the executive vice president of the Association of Advanced Rabbinical and Talmudic Schools. For more than thirty years, Dr. Fryshman has advocated for the protection of Jewish cemeteries in Europe. In accordance with Jewish law and tradition, he believes that a Jewish cemetery's land is sacred and owned communally by the Jewish people. To disturb the remains of the dead or to use such land for commercial purposes, he believes, is a form of sacrilege. The planned development of the Jewish cemetery at issue in this case is thus deeply offensive to Dr. Fryshman and would, if carried out, deprive him of his interest in land that is properly considered communal property.

4. Plaintiff Boruch Pines is a descendent of Jews who were buried in the cemetery at issue in this case. He finds the planned development of the cemetery where his ancestors are buried to be deeply offensive.

5. Defendant United States Commission for the Preservation of America's Heritage Abroad is an independent agency of the United States established by U.S. Public Law 99-83. The Commission is charged by law with identifying cemeteries and other important cultural sites in Europe and obtaining assurances from the governments of the region that the sites will be protected.

## BACKGROUND

**The Commission is required by law to protect endangered Jewish cemeteries in Europe.**

6. In Jewish law and tradition, cemeteries are sacred sites that must never be disturbed. A cemetery's land is treated as communal property belonging to the Jewish people. Using such

2

land for commercial development or disturbing the human remains buried there is considered sacrilege.

7. There are many important Jewish cemeteries in Europe. Many of those sacred sites were destroyed or desecrated under Nazi rule or subsequent Communist governments. Others fell into disrepair after the decimation of Europe's Jewish population in the Holocaust. More recently, Jewish cemeteries have been threatened by development projects that seek to put cemetery land to commercial use.

8. In response to those problems, Congress established the Commission for the Preservation of America's Heritage Abroad as an independent agency of the United States. Pub. Law. 99-83, sec. 312302. In its statement of purpose, Congress concluded that, "[b]ecause the fabric of a society is strengthened by visible reminders of the historical roots of the society, it is in the national interest to encourage the preservation and protection of the cemeteries, monuments, and historic buildings associated with the foreign heritage of United States citizens." *Id.*, sec. 312302.

9. The Commission's organic statute directs it to identify cemeteries and other historic sites—"particularly" those "that are in danger of deterioration or destruction"—in Eastern and Central Europe that are associated with the heritage of U.S. citizens. *Id.*, sec. 312304(a)(1). The agency is then required to "encourage the preservation and protection of those cemeteries ... by obtaining, in cooperation with the Secretary of State, assurances from foreign governments that the cemeteries ... will be preserved and protected." *Id.*, sec. 312304(a)(2). In accordance with the statute, the Commission, not the U.S. Department of State, is primarily responsible for the negotiation and enforcement of agreements to protect Jewish cemeteries in Europe.

10. Congress in 2014 further emphasized the importance of protecting cemeteries abroad by amending the International Religious Freedom Act to cover such sites. Pub. Law 113-154, sec. 2. As Congress concluded, "[c]emeteries are sacred sites that are of great spiritual, cultural, and historical significance," the destruction and defacement of which "constitute an assault on the fundamental right to freedom of religion." *Id.*, sec. 1(1), (4).

3

**The Commission has failed to take steps to protect the endangered Jewish cemetery
in Vilnius, an extremely important sacred Jewish site.**

11. The Jewish cemetery in the Šnipiškės area of Vilnius, the capital of Lithuania, is one of
Europe's most important sacred Jewish sites. Vilnius was once a center of Jewish culture in
Europe and was known as the "Jerusalem of Lithuania." The cemetery, called Shnípishok in
Yiddish, dates back to the fifteenth century and holds the remains of tens of thousands of Jewish
people, including scholars and sages whose works continue to guide Jewish people today. The
cemetery, in accordance with Jewish law and tradition, was historically treated as communal
property belonging to the Jewish people.

12. The cemetery was seized by Nazi Germany in World War II and then by the Soviet
Union. The Soviets in 1972 removed the cemetery's gravestones and erected a large sports hall
("Sports Palace") in the middle of its grounds. The Sports Palace, built on ground containing the
remains of those buried there, is now abandoned. After Lithuania became independent, its
government took control of the land. No restitution for the seizure of the cemetery was ever paid.

13. In 2002, the Commission's chairman, on behalf of the United States, signed an
agreement with Lithuania titled "Agreement on the Protection and Preservation of Certain
Cultural Properties between the United States and Lithuania." The agreement generally required
each party to "take appropriate steps to protect and preserve" cemeteries and other culturally
significant sites. It did not, however, identify the cemetery at Vilnius (or any other specific sites),
require the cemetery's protection, or prohibit development of the site.

14. In 2005 and 2007, Lithuania allowed construction of two apartment buildings on the
cemetery grounds. The construction required moving tons of earth containing bones and human
remains. Following a public outcry, Congress passed a concurrent resolution conveying its
"outrage[]" at "the construction that occurred within the perceived boundaries of the historic
Jewish cemetery." H. Con. Res. 255 (2008). The resolution expressed Congress's "strong
sentiments to the Government of Lithuania that the people of the United States believe the
Jewish cemetery … must not be desecrated." *Id.* "That the Government of Lithuania has allowed

4

construction to take place," it stated, "is an affront to the international Jewish community, the American people, and everyone who values religious freedom and ethnic diversity around the world[.]" *Id.*

15. Lithuania in 2015 announced plans to further develop the cemetery by expanding the abandoned Sports Palace into a concert and convention center. If carried out, the plans would inevitably require digging up and otherwise disturbing the remains of many more of the dead buried nearby. The new center would also profane the sacred site by bringing thousands of people every day to meet and enjoy themselves on the cemetery's grounds.

16. Lithuania's government cites the approval of a London-based Jewish group and an allied group in Lithuania, whose authority is contested by the Jewish people of Vilnius. But Jewish people in Lithuania, the United States, and around the world have passionately protested the planned development. In a September 2018 statement, representatives of Vilnius's small remaining Jewish community wrote that the planned development "denigrates fundamental values of humankind" and that reliance on the blessing of the few who support the project "ignore[s] the voices of thousands of [Lithuanian] citizens." A petition opposing the plan gathered almost 50,000 signatures.

17. The Commission has done nothing to fulfill its statutory obligation to "obtain[] … assurances" from Lithuania that the cemetery "will be preserved and protected." Pub. Law 99-83, sec. 312304(a)(2). Although the agency's 2002 agreement with Lithuania vaguely requires the country to take "appropriate steps" to protect cultural sites in general, the agreement does not identify the cemetery at Vilnius or prohibit development of its land. And despite its duty to "particularly" identify and protect cemeteries "that are in danger of deterioration or destruction," *Id.*, sec. 312304(a)(1), the Commission has remained silent in the face of Lithuania's plans. That silence has been interpreted by Lithuania as the assent of the United States to those plans.

18. Unless this Court requires the Commission to immediately take steps to protect the cemetery as the law requires, construction on the cemetery grounds is likely to begin imminently.

## CLAIM FOR RELIEF

19. The Administrative Procedure Act provides that a reviewing court may set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The law defines agency action to include an agency's "failure to act." *Id.* §551(13).

20. The Commission's failure to take steps to preserve and protect the Jewish cemetery in Vilnius is a failure to act that is arbitrary and capricious, an abuse of discretion, and in violation of the agency's organic statute, Public Law 99-83.

   a. The Commission's organic statute requires it to "obtain[] ... assurances from foreign governments" that sites like the Jewish cemetery are preserved and protected. Pub. Law 99-83, sec. 312304(a)(2). Although there is no guarantee that the Commission will be able to successfully obtain such assurances from Lithuania, the law's plain language, at a minimum, requires it to at least *attempt* to do so.

   b. The law requires the Commission to "particularly" identify and protect "cemeteries ... that are in danger of deterioration or destruction." *Id.*, sec. 312304(a)(2). But despite the imminent threat to the cemetery, the Commission has not acted to protect it.

   c. The Commission's failure to act is especially egregious given Congress's expression of the "strong sentiment[]" that the Vilnius cemetery "must not be desecrated." H. Con. Res. 255 (2008).

21. Once construction of the Concert and Convention center has begun, the resulting desecration cannot be undone. Absent an injunction, the harm to the plaintiff will therefore be irreparable.

## PRAYER FOR RELIEF

Wherefore, the plaintiff requests that this Court:

A. Declare that the Commission's failure to seek assurances from Lithuania that the Jewish cemetery in the Šnipiškės area of Vilnius (known as Shnípishok) will be preserved and protected is a failure to act that is arbitrary and capricious, an abuse of discretion, and in violation of the agency's organic statute, Public Law 99-83;

B. Issue an injunction requiring the Commission to immediately take reasonable steps to obtain the assurances that the law requires;

C. Award plaintiff his costs; and

D. Grant all other appropriate relief.

Dated: November 8, 2018                    Respectfully submitted,

*Bernard Fryshman*

Bernard Fryshman, PhD
1016 East 2nd Street
Brooklyn, New York 11230
(718) 253-4857
bfryshma@nyit.edu

*Baruch Pine*

Boruch Pines,
75 Lawrence Avenue
Brooklyn, New York 11230
(718) 435-8569